**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERT PIOTROWSKI** | : | |
| | : | |
| **and** | : | |
| | : | |
| | : | |
| **IWONA PIOTROWSKI** | : | |
| **10916 CITREON COURT** | : | |
| **NORTH POTOMAC, MD  20878** | : | |
| | : | |
| *On Their Behalf and on* | : | Case No.   **8:11-cv-03758-DKC** |
| *Behalf of a Class of* | : | |
| *Persons Similarly* | : | |
| *Situated* | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **WELLS FARGO BANK, NA** | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| Defendant | : | |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>[1,2,3]

Plaintiffs   Robert   Piotrowski   ("Mr.   Piotrowski")   and   Iwona   Piotrowski   ("Mrs.

Piotrowski") (combined "Named Plaintiffs" or "Plaintiffs" or "Mr. & Mrs. Piotrowski"), through

---

[1] By Order of the Court, Plaintiffs were granted leave to file this Amended Class Action Complaint.  Doc. 21.

[2] Plaintiffs do not reassert any claims previously dismissed by the Court (Doc. 21) herein, but simply preserve them in this Amended Class Action Complaint for purposes of Appeal if necessary.  By this Amended Class Action Complaint, Plaintiffs generally intend to only add Plaintiff Iwona Piotrowski as an additional Plaintiff, correct misnomers in the original complaint, and clarify certain factual allegations consistent with the Court's Opinion and Order.  Doc.s 20-21.

[3] Attached hereto as Exhibit 1 is a comparison copy of the changes made in this Amended Class Action Complaint.

their undersigned counsel file this Amended Class Action Complaint and Request for Jury Demand and say in support:

## I. INTRODUCTION

1. The underlying matter involves just one thousands of other similar situations across the State where homeowners are (i) seeking to change and modify their current mortgage loans without requesting any additional advances, (ii) complying with all requests of their servicer/lender in making the requests, but (iii) all their reasonable steps are ignored and the homeowners are left with no other option but to seek the assistance of the courts.  .

2. These claims concern the utter failure of the Defendant Wells Fargo Bank, NA ("Wells Fargo" or "Defendant") to comply with Federal and Maryland law related to Mr. & Mrs. Piotrowski's reasonable and appropriate requests to modify the terms of their mortgage loan subject to this action.

3. Many, but not all, Maryland homeowners facing foreclosure have reasonable and sustainable solutions to their mortgage situation.  Mr. & Mrs. Piotrowski do have a sustainable solution, yet the Defendant, by and through its authorized agents, threatened wrongful foreclosure on Mr. & Mrs. Piotrowski, in the same way it is similarly treating the  Class (defined in ¶ 42 below).

4. Further, if the Defendant and its authorized agents proceed to foreclosure sale of Mr. & Mrs. Piotrowski's, as well as foreclosure against the Class members' home and property without having complied with Federal and Maryland law or even responding to borrowers' requests for modification, Mr. Piotrowski and the Class will sustain significantly greater damages and losses as a result through further loss of equity in their

homes and emotional damages as a result of these proceedings and the Defendant's illegal actions (directly and indirectly through its authorized agents and affiliates).

## II.  THE PARTIES

5.  Plaintiffs Robert Piotrowski and Iwona Piotrowski are individual residents of Montgomery County and reside at 10916 Citreon Court, North Potomac, MD 20878 ("the Property").

6.  Defendant Wells Fargo does business in the State of Maryland.  The resident agent for Wells Fargo is CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 1660, Baltimore, MD  21202.   Wells Fargo also does business as Wells Fargo Home Mortgage.

## III.  JURISDICTION

7.  This Court has jurisdiction and venue of the matters asserted herein.   Jurisdiction is appropriate for the following reasons:

   a.  On the basis of diversity of citizenship and in light of the amount in controversy is in excess of $75,000 exclusive of costs. 28 U.S.C. § 1332;

   b.  The matters asserted herein present federal questions.  28 U.S.C. § 1331 and the court has jurisdiction over any non-federal question claims under 28 U.S.C. § 1367; and

   c.  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711-1715 since the amount in controversy exceeds $5,000,000 and the members of the Plaintiff's class are citizens of a

state different from the Defendant.

8. Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201 and 2202, Md. Code Ann., §§ 3-401 – 3-415, and Fed. R. Civ. P. 23.

9. Venue in this District is proper in that the Defendant transacts business within the District and the conduct complained of occurred in the District.

## IV. FACTS

### A. The Foreclosure Crisis

10. Over the last four years, Maryland and, indeed, the United States have been in a foreclosure crisis. Recent news reports have established that one in ten American homes is at risk of foreclosure.

11. The number of Maryland properties with foreclosure filings has increased substantially throughout the last four years.

12. Increased foreclosures have a detrimental effect not just on the borrowers who lose unique property and face homelessness, but also on the homes surrounding a foreclosure and, perhaps, neighborhoods that suffer decreased property values and municipalities that lose tax revenue.

13. The foreclosure crisis is far from over. Economists predict that interest rate resets on the riskiest of lending products will not reach their zenith until sometime in 2011 or beyond. *See* Eric Tymoigne, Securitization, Deregulation, Economic Stability, and Financial Crisis, Working Paper No. 573.2 at 9, Figure 30 *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1458413 (citing a Credit Suisse study showing monthly mortgage rate resets).

14. Since the commencement of the crisis, revelations of bogus, false, and deceptive "robo signing" have come to light involving national lenders and mortgage servicers.   In Maryland the illegal "robo-signing" issue has even come to the forefront because attorneys and substitute trustees, including those acting on behalf of Wells Fargo have admitted that they filed bogus documents in hundreds of foreclosure cases filed in state courts.   These revelations have led to a series of administrative and regulatory activities concerning the servicing standards of residential, mortgage loans including those of the Defendant.   *See* Wells Fargo-Office of the Comptroller of the Currency of the United States of America Consent Order, No. AA-EE-11-19 (April 13, 2011),[4] Wells Fargo-State Attorney General Consent Judgment, Case No. 1:12-cv-00361  (D.C. for Dist. of Columbia) (April 4, 2012),[5] and Wells Fargo-OCC January 2013 Settlement.[6]

   **B.    MARYLAND'S RESPONSE TO THE FORECLOSURE CRISIS**

15. In 2007 at the beginning of the crisis, Governor O'Malley convened a task force of representatives to address the crisis that was then underway.   The Maryland Homeownership Preservation Task Force produced a report which aptly summarized the devastating effect of foreclosures on the community as follows:

   Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the

---

[4] Available at http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47k.pdf.

[5] Available at http://nationalmortgagesettlement.com/.

[6] Preliminary details are available at http://www.occ.gov/news-issuances/news-releases/2013/nr-ia-2013-3.html at the time of this filing.

St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of foreclosures in Chicago in 2005 estimated that a single foreclosure costs city government up to $5,000 or more.

Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.

Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure, according to information from St. Ambrose Housing Aid Center, Inc. The banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report at 12 (November 29, 2007)

*available at* http://www.gov.state.md.us/documents/HomePreservationReport.pdf

(footnotes omitted).

16. To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court. *See Id.* at 40-43. Included among these was a specific recommendation, which included the adoption of a good faith and fair dealing standard of care for loss mitigation in Maryland. *Id.* (recommendation 7.3).

17. In response to the expanding foreclosure crisis and the Task Force Report, the General Assembly introduced and passed several bills during the 2008 legislative session to

change Maryland's foreclosure process and curb certain predatory real estate processes.

These bills were passed with nearly complete bi-partisan support. As summarized in the

General Assembly's 90 Day Report for the 2008 session:

Until [2008], Maryland's foreclosure process, from the first foreclosure filing to final sale, had been among the shortest in the nation. Maryland is a quasi-judicial State, meaning that the authority for a foreclosure sale is derived from the mortgage or deed of trust, but a court has oversight over the foreclosure sale process. Most mortgages or deeds of trust include a "power of sale" (a provision authorizing a foreclosure sale of the property after a default) or an "assent to decree" (a provision declaring an assent to the entry of an order for a foreclosure sale after a default). Under the Maryland Rules, it was not necessary to serve process or hold a hearing prior to a foreclosure sale pursuant to a power of sale or an assent to a decree. Consumer advocates contended that the short timeframes and weak notice provisions in State law seriously limited a homeowner's options to avoid foreclosure by, for example, working out a payment plan with the lender or selling the house. In addition, filing a request for an injunction to stop the sale is expensive, time consuming, and not a realistic option for most homeowners.

*Senate Bill 216* (*Ch. 1*)/*House Bill 365* (*Ch. 2*), emergency legislation that took effect April 4, 2008, make a number of significant changes to the foreclosure process in Maryland for residential real property. "Residential property" is defined under the Acts to mean real property improved by four or fewer single-family dwelling units. Except under specified circumstances, the Acts prohibit the filing of an action to foreclose a mortgage or deed of trust on residential property until the later of 90 days after a default in a condition on which the mortgage or deed of trust states that a sale may be made or 45 days after the notice of intent to foreclose required under the Acts is sent.

. . . .

*Senate Bill 217*/*House Bill 360* define "mortgage fraud" as any action by a person made with the intent to defraud that involves:
• knowingly making, using, or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that it will be relied upon by a mortgage lender, borrower, or any other party to the lending process;
• receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from the aforementioned actions;
• conspiring to violate either of the preceding provisions; or
• filing or causing to be filed in the land records in the county where a residential real property is located any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

7

Under the Acts, the "mortgage lending process" includes the solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan, as well as the notarizing of any document in connection with a mortgage loan.

Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) *available at* http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

18.  The Maryland Court of Appeals recently adopted in October 2010 an emergency rule to deal with the robo-signing issue based upon the recommendation of the Standing Committee on Rules of Practice and Procedure.  Writing for the Committee the Honorable Alan M. Wilner explained:

The need for these changes emanates from recent revelations regarding the filing in residential foreclosure actions of affidavits as to which the affiant either did not have sufficient knowledge of the facts stated in the affidavit to validly attest to their accuracy or did not actually read or personally sign the affidavit. Preliminary audits have shown that hundreds of such affidavits have been filed in Maryland circuit courts. Up to this point, courts, with good reason and really of necessity, have relied on the accuracy of affidavits, especially when filed by attorneys, unless there is something on the face of the document to suggest otherwise or the validity of the affidavit is challenged. Evidence that has recently come to light, largely through admissions under oath by the affiants themselves, has shaken the confidence that the courts have traditionally given to those kinds of affidavits.

In the Committee's view, the use of bogus affidavits to support actions to foreclose liens on property, apart from prejudice to the homeowners, constitutes an assault on the integrity of the judicial process itself.

Letter from A. Wilner to the Court of Appeals, Oct. 15, 2010.

19. In further response to the foreclosure crisis, Maryland Commissioner of Financial Regulation has established  "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with

the…servicing…of any mortgage loan, including, but not limited to…(3) The duty when servicing mortgage loans to: (a) Promptly provide borrowers with an accurate accounting of the debt owed when borrowers request an accounting; (b) Make borrowers in default aware of loss mitigation options and services offered by the licensee; (c) Provide trained personnel and telephone facilities sufficient to promptly answer and respond to borrower inquiries regarding their mortgage loans; and (d) Pursue loss mitigation when possible." Md. Code Regs. 09.03.06.20.

**C.  Background on Mr. & Mrs. Piotrowski's Mortgage Loan Subject to this Action**

20.  Mr. & Mrs. Piotrowski are the owners of the Property.  They purchased the Property on or about January 31, 2007.

21. Mr. & Mrs. Piotrowski became concerned about their mortgage in December 2010 as a result of a reduction of household income from Mr. Piotrowski's business and Mrs. Piotrowski losing her part-time employment and income due to government furloughs by her employer.

22. In an effort to be a proactive and responsible homeowners, Mr. Piotrowski on behalf of himself and his wife, contacted Wells Fargo to seek a modification in December 2010. The Piotrowskis completed the modification application on or about January 13, 2011 by telephone and submitted the written application at about the same time seeking to change and modify the terms of their current mortgage loan, without requesting additional advances or credit, by adjusting their monthly mortgage payment to 31% of their then total pretax monthly income.  Included with the request The Piotrowskis provided Wells

Fargo with all the required documentation and support documents requested as part of the credit application (referred to as "First Modification Request").[7]

23. Wells Fargo's telephone representative confirmed to Mr. Piotrowski  on or about January 26, 2011 that Wells Fargo had all the documentation it needed from Mr. & Mrs. Piotrowski for the First Modification Request and the package had been approved by the processor.   Mr. & Mrs. Piotrowski relied on this representation and continued to proactively communicate and provide Wells Fargo will all the information it requested thereafter.

24. In the next few days, Wells Fargo's authorized representatives spoke to Mr. Piotrowski or attempted to speak to him on multiple occasions including (but not limited to): February 1, 2011 at 10:15AM; February 8, 2011 at 4:32PM; February 11, 2011 at 2:25PM; and February 26, 2011 at 12:40PM.   In none of these or any other communications on the telephone or in writing did Wells Fargo ever state to Mr. Piotrowski  or Mrs. Piotrowski that the First Modification Request had been denied.

25. From December 2010 through February 2011, Mr. & Mrs. Piotrowski were not in default of their mortgage loan.

26. On February 7, 2011, Wells Fargo informed Mr. & Mrs. Piotrowski that they had been approved for a "Special Forbearance Agreement" commencing March 1, 2011.   Under the Special Forbearance Agreement, Wells Fargo reduced Mr. & Mrs. Piotrowski's monthly payment to $1,657.79 for the months of March, April, and May 2011.   Wells Fargo also represented to Mr. & Mrs. Piotrowski in the Special Forbearance Agreement

---

[7] The Court has dismissed the Piotrowski's ECOA claims related to the First Modification Request.  See Doc. 20 at Pages 20-21.  The preservation of these facts related to Mr. & Mrs. Piotrowski's ECOA claim in this Amended Class Action Complaint is solely to preserve, if necessary, to Mr. & Mrs. Piotrowski's appeal rights as this matter continues.

that they would be continued to be considered for modification of their loan as they had applied.

27. Mr. & Mrs. Piotrowski reasonably relied upon Wells Fargo's representation that it would continue to consider their First Modification Request during the period of time the Special Forbearance Agreement was in effect and demonstrated that reliance by accepting and completely performing all of their obligations in the Special Forbearance Agreement offered by Wells Fargo on February 7, 2011 including by making the three payments in advance of the stated due date under the Special Forbearance Agreement.

28. On April 25, 2011 at approximately 3:20PM, Wells Fargo Processor Shona Sanders requested that Mr. & Mrs. Piotrowski apply again for a loan modification through her by providing her a copy of their (i) hardship letter; (ii) proof of income for the last thirty days; (iii) a financial work sheet and profit and loss statement; and (iv) various other papers.

29. In response and in reliance to Ms. Sanders' request of April 25, 2011 and representation that they would be considered for a modification, the next day, April 26, 2011, Mr. Piotrowski on his behalf and on behalf of his wife sent to Wells Fargo all of the documents requested in support of their application to change and modify the terms of their current mortgage loan, without requesting additional advances or credit, by adjusting their monthly mortgage payment to 31% of their then total pretax monthly income (referred to as "Second Modification Request").[8]

---

[8] The Court has dismissed the Piotrowski's § 1691(d)(2) ECOA claim related to the Second Modification Request.  See Doc. 20 at Pages 21-23.  The preservation of these facts related to Mr. & Mrs. Piotrowski's § 1691(d)(2) ECOA claim in this Amended Class Action Complaint is solely to preserve, if necessary, to Mr. & Mrs. Piotrowski's appeal rights as this matter continues.

30. On May 15, 2011, Wells Fargo wrote to Mr. & Mrs. Piotrowski and informed them that their loan was in default and threatened a "foreclosure" unless they brought the loan current immediately.

31. Wells Fargo never provided Mr. & Mrs. Piotrowski with any written statement of denial of their First Modification Request or Second Modification Request before threatening each with foreclosure in the May 15, 2011 letter.

32. On approximately May 26, 2011, in reliance to Wells Fargo's threat of foreclosure before it had ever denied either the First Modification Request or the Second Modification request, Mr. & Mrs. Piotrowski made the cure payment demanded by Wells Fargo on May 15, 2011 in the sum of $3,926.04 (which represented the difference between their regular payment and the Special Forbearance Agreement payments for months of March through May 2011).

33. On or about May 25, 2011 at 7:15AM, after again bringing their loan current following Wells Fargo's unexplained rejection of the Special Forbearance Agreement, Mr. & Mrs. Piotrowski' applied for a another loan modification with Wells Fargo for their home loan. In this application, they again sought to change and modify the terms of their current mortgage loan, without requesting additional advances, by adjusting their monthly mortgage payment to 31% of their total pretax monthly income or some other similar terms designed to defer the sum due on their mortgage until a time when they could improve their income.  Mr. & Mrs. Piotrowski, on his behalf and on behalf of his wife, provided Wells Fargo another complete application and also provided paystubs, other requested documentation, and a hardship letter (hereinafter referred to as "Third

Modification Request").   No acknowledgement or denial was ever received by Mr. & Mrs. Piotrowski regarding this application.

34.  Even though Mr. & Mrs. Piotrowski had never missed a payment, made all their Special Forbearance Agreement payments before they were due, and made their cure payment as demanded by Wells Fargo, Mr. Piotrowski learned in a phone call with Wells Fargo representative named Tony at 1:30PM on June 20, 2011 that Wells Fargo was assessing Mr. & Mrs. Piotrowski's account (without the equitable right to do so), with late fees of $128.43 as a result of the Special Forbearance Agreement it had offered Mr. & Mrs. Piotrowski while it further considered their First Modification Request  and Mr. & Mrs. Piotrowski agreed to and performed all of their duties and responsibilities.  Upon learning for the first time that Wells Fargo was assessing him and his wife the bogus late fees, Mr. & Mrs. Piotrowski sent Wells Fargo a payment in the sum alleged to be due the same day out of fear that if they did not, Wells Fargo would wrongfully assess them further fees or even threaten foreclosure again for no bona fide reason.

35. In support of the Third Modification Request and in reliance to Wells Fargo's continued promises to consider Mr. & Mrs. Piotrowski for a loan modification, Mr. Piotrowski, on his behalf and his wife's behalf, sent Wells Fargo all additional requested documents it sought on July 6, 2011 and July 25, 2011 by facsimile addressing them to Wells Fargo representative Dee Dee Greenwall.   In further support of their Third Modification Request and in reliance to Wells' Fargo's acceptance of that application for help, Mr. Piotrowski attempted to speak to Ms. Greenwall (as well as any other representative and left messages) on multiple dates including the following approximate dates and times: July 21, 2011 at 11:25AM; August 2, 2011 at 2:21PM; August 3, 2011 at 3:43PM and

4:10PM; August 5, 2011 at 11:05AM and 1:50PM; August 9, 2011 at 10:20AM; and August 11, 2011 at 10:25AM.

36. A Wells Fargo's representative speaking on behalf of Ms. Greenwall in her absence represented to Mr. Piotrowski on August 11, 2011 that Wells Fargo had all the information necessary to consider Mr. & Mrs. Piotrowski's Third Modification Request and it had been forwarded to the underwriters for review and it would take that department about three to four weeks to review.

37. On September 7, 2011 at approximately 10:52AM, Mr. Piotrowski left a message for Greenwall request an update on Mr. & Mrs. Piotrowski's  Third Modification Request. On September 15, 2011 Ms. Greewall contacted Mr. Piotrowski concerning Mr. & Mrs. Piotrowski's Third Modification Request and promised to provide Mr. & Mrs. Piotrowski an update by September 19, 2011. No such update was ever provided to Mr. & Mrs. Piotrowski.

38. Mr. Piotrowski, on his and wife's behalf, continued to seek status updates concerning their Third Modification Request from Ms. Greenwall, in reliance to her previous representations described above, on: September 20, 2011 at 9:15AM; September 29, 2011 at 10:25AM; and October 13, 2011 at 8:26AM.  At all times Mr. & Mrs. Piotrowski had provided all information that was requested of them in support of the Third Modification Request.

39. Wells Fargo chose simply to ignore Mr. & Mrs. Piotrowski's Third Modification Request and never responded and never provided them with any written response or denial regarding this application.

40.    Without the loan modification Mr. & Mrs. Piotrowski have struggled to keep up with all of their monthly expenses and have considered filing bankruptcy to clear their unsecured debt so that they could focus on keeping their mortgage current and keeping their home.  Mr. & Mrs. Piotrowski have even considered conducting a short sale of their home since Wells Fargo does not seem to want to ever respond to their reasonable requests.

41.  Mr. & Mrs. Piotrowski has been damaged by Well Fargo's direct and indirect actions, including those by its authorized employees, agents, and sub-agents, described herein through the improper threat of an imminent foreclosure action against the Property and Mr. & Mrs. Piotrowski which has damaged their credit, the assessment of unfair and deceptive late fees and costs to their account, cost him legal fees and expenses and lost time from work while attempting to resolve this dispute without the need for litigation, and caused emotional damages to each which are manifested by stress, severe insomnia, sleeplessness, worry,  and anxiety.  Upon information and belief, since the threat of losing one's home is something that would affect any person adversely, the Plaintiffs' Class has suffered similar damages.

**Plaintiffs' Class Definition**

42. This class action is brought by Mr. & Mrs. Piotrowski on behalf of themselves and a Plaintiffs' Class of all Maryland homeowners whose mortgage loans (i) have been serviced by Wells Fargo and (ii) since three years proceeding this action have sought to change the terms of their existing mortgage without requesting additional advances or credit; and (iii) have not received any written notice of denial of their request for modification or change in terms and (iv) have been subject to a foreclosure action or

threat of foreclosure by Wells Fargo(hereinafter "Plaintiffs' Class").

**Facts Common to the Plaintiffs' Class**

43. Named Plaintiffs sue on their own behalf and on behalf of a Class of persons under Fed. Rule. Civ. Pro. 23.

44. Named Plaintiffs do not know the exact size or identities of the proposed Class, since most of the information is in the exclusive control of Defendant.  Certain information may be reported by the Defendant to the State of Maryland and may also be part of the public records.  Named Plaintiffs believe that the Class encompasses many hundreds of individuals and whose identities can be readily ascertained from Wells Fargo's books and records as well as public records.  Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

45. Named Plaintiffs believe the amount in controversy is more than $5 million.

46. All members of the Class have been subject to and affected by the same conduct. The claims are based on Wells Fargo's standard policies and practices that employ standard form letters, contracts and uniform loan modification processing requirements.  There are also questions of law and fact that are common to the class, and predominate over any questions affecting only individual members of the class.  These questions include, but are not limited to the following:

    a.       the nature, scope and operation of Wells Fargo's obligations to homeowners under its mortgage modification programs;

    b.       whether Wells Fargo's threat, referral to or prosecution of a  foreclosure or foreclosure sale/action while simultaneously considering a borrower for a modification amounts to a breach of contract and/or a breach of its duty of good

faith and fair dealing to the Class and constitutes an unfair and deceptive practice or misrepresentation or omission under Maryland law;

c.          whether Wells Fargo's failure to provide a written denial to the Class requests for a change in the terms of their existing credit without request for additional advances is a violation of Wells Fargo's duty of good faith and fair dealing to the Class;

d.          whether Wells Fargo's conduct violates the Equal Credit Opportunity Act ("ECOA"),  15 U.S.C. § 1691 e*t seq.* and state law requirements relating to Equal Credit;

e.          whether Wells Fargo's conduct violates the Maryland Consumer Protection Act ("MCPA"), MD CODE ANN., COM. LAW, § 13-101, *et seq.;*

f.          whether Wells Fargo's conduct violates the MARYLAND CONSUMER DEBT COLLECTION ACT ("MDCDCA"), MD CODE ANN., COM. LAW, § 14-201, et seq.;[9]

g.          whether Wells Fargo's conduct violates the MARYLAND MORTGAGE FRAUD PREVENTION ACT ("MMFPA"), MD CODE ANN., REAL PROP., § 7-401, *et seq.;*

h.          whether there are more than 50 borrowers who are members of the Class;

i.          whether Wells Fargo should be enjoined from continuing to pursue

---

[9] The Court has previously dismissed the Mr. Piotrowski's claims under the MCDCA.  The preservation of this allegation related to the MCDCA in this Amended Class Action Complaint is solely to preserve, if necessary, to Mr. & Mrs. Piotrowski's appeal rights as this matter continues.  *See* Doc. 20 at Pages 25-28.

foreclosure actions, directly or indirectly, in Maryland concerning borrowers who have requested a mortgage modification of their existing credit arrangement without seeking additional credit but whom they have not received a written denial from Wells Fargo;

j.      the attorney fees, litigation costs, and court costs allowed and claimed in this civil action;

k.      the declaratory relief sought in this civil action; and

l.      The injunctive relief sought in this civil action.

47. The claims of the Named Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the Class that both the Named Plaintiffs and the other members of the Plaintiffs Class were subject to the same conduct, same modification procedures by Wells Fargo, and were met with the same absence of any written response to applications for a change in mortgage terms without an extension of additional advances and/or subject to or threatened with foreclosure before a modification had been denied or even completed in writing.

48. Named Plaintiffs are similarly situated with and has suffered similar damages as the other members of the Class as described in ¶¶ 4, 40-41 above.

49. The Named Plaintiffs will fairly and adequately represent the interests of the Class. Each are committed to the vigorous prosecution of the class claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions. Named Plaintiffs has no interests adverse to the Class.

50. A class action is superior to other methods for the fast and efficient adjudication of this

controversy.  A class action regarding the issues in this case does not create any problems of manageability.

51. This putative class action meets all of the requirements of Fed. Rule. Civ. Pro. 23.

52. Wells Fargo has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

53. It would not be economically feasible for each of the individual Class members to maintain similar claims since many of them have already suffered financial setbacks.

54. The damages of each individual Class members can be calculated using the same common formulas.

55. Failure to join the claims of each individual claimant into class claims would lead to duplicate claims/litigation involving the same issues and facts, excessive costs and fees, burdens and potentially inconsistent outcomes.

56. The common issues set forth above predominate and asserting the claims on a class basis is superior to the alternative of individual actions.

57. The Class had no reason to know of the true illegal nature of the illegal acts of the Defendant concerning the responses to their mortgage loan modification requests since the Defendant routinely omits or misrepresents certain required information from the Class concerning the status of the hundreds of modification requests made to them during the class period.

58. This case is one of those rare instances where circumstances external to the conduct of the Class which warrant a finding that it would be unconscionable to enforce the various federal and state limitations periods against the Class since such an act would create a

gross injustice of allowing the Defendant to wrongfully and unjustly enriched to the detriment of the Class in the millions of dollars.

59. This matter is an extraordinary circumstance at the core of the current economic troubles related to the slumping housing environment that is beyond the control of the Class and Named Plaintiffs who trusted that licensed mortgage professionals and national banks, including the Defendant, would comply with the law.  Because the Defendant misrepresented that their acts were authorized by the government, the Class had no reason to investigate further on their own.

### COUNT I -- VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. §1691(d))
(Individual and Class Claim)

60. Mr. & Mrs. Piotrowski reiterates and incorporates every allegation above, including those specifically alleged in ¶¶ 20-41, as if set forth herein in full and adds:

61. Mr. & Mrs. Piotrowski are "applicants" as governed by ECOA, 15 U.S.C §1691a(b).

62. Wells Fargo is a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e) at all times relevant hereto.

63. 15 U.S.C §1691(d)(1) provides that "within thirty days…after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

64. The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

65. Additionally, 15 U.S.C. §1691(d)(2) requires "that each applicant against whom "adverse action" is taken shall be entitled to a statement of reason for such action from the creditor." 15 U.S.C. §1691(d)(2).

66. 15 U.S.C. §1691(d)(6) defines "adverse action" as a denial or revocation of "credit", a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. §1691(d)(6)

67. The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a (d); 12 C.F.R. §202.2(j).

68. The applications for modifications of their loan terms by the Named Plaintiffs and Class Members were applications for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. §202.2(j).

69. Named Plaintiffs and Class Members provided Wells Fargo with completed applications for credit.

70. Wells Fargo failed to evaluate the Named Plaintiffs and the Class Members' loan modification requests in good faith and a make any determination on the applications after receiving the completed loan modification applications.

71. Instead, Wells Fargo grossly ignored its responsibility to respond to Mr. Piotrowski and the Class' loss mitigation requests as proscribed in Md. Code Regs. 09.03.06.20 and related federal guidance and standards described herein, and proceeded to threaten or engage in illegal foreclosure actions.

72. In failing to evaluate the Class applications for credit in a manner required by the federal and state regulations (including Md. Code Regs. 09.03.06.20), Wells Fargo effectively

denied the Class credit, and thereby took "adverse action" – as defined by ECOA – on the Class Member's applications.

73. The Plaintiffs Class never received written notice from Wells Fargo or anyone else of the adverse action taken on their applications for loan modifications.

74. Additionally, Wells Fargo's belated notifications by telephone described above were  not in compliance with the notification requirements set forth in ECOA, 15 U.S.C. §1691(d)(2), as the notification failed to provide Plaintiff with a specific, truthful statement of written reasons for the adverse action taken.

75. The above failure of Wells Fargo to notify the Class of the adverse actions taken on their application within thirty days from receipt of their completed application for credit as mandated by 15 U.S.C §1691(d)(1), §1691(d)(2) and 12 C.F.R §202.9(a)(1)(i) was a substantive violation of ECOA.

76. As a result of the above ECOA violations, the Class has suffered substantial actual damages in the following:

    a.  the loss of the Plaintiffs Class' rights to explain or quickly rectify and address any errors or problems in their applications for credit;

    b.  the assessment of extra fees and charges by Wells Fargo that accrued due to its delays in responding the Plaintiffs Class' requests for credit;

    c.  the loss of the credit itself; and

    d.  frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

77. As a result of the above alleged ECOA violations, Wells Fargo is liable to the Named Plaintiffs and the Plaintiff Class for actual damages pursuant to 15 U.S.C. §1691(e)(a),

for punitive damages against Wells Fargo pursuant to 15 U.S.C. §1691e(b) and for attorneys fees and costs pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

WHEREFORE, Named Plaintiffs pray this Court to award the following relief against Wells Fargo for its violations of ECOA:

A. The Court certify the Class and appoint the Named Plaintiffs as class representative and their counsel as Class Counsel;

B. Actual damages as described in ¶¶ 4, 40-41, 48, 54 above in a sum of no less than $20,000 per Plaintiffs' Class Member pursuant to 15 U.S.C. §1691 (e)(a).

C. Punitive Damages in the amount of $500,000 against Wells Fargo pursuant to 15 U.S.C. §1691e(b).

D. Attorneys fees and costs pursuant to 15 U.S.C. § 1691e (d).

E. The Plaintiffs' Class and Named Plaintiffs are also entitled to equitable relief pursuant to 15 U.S.C. § 1691e (c) and Fed.R.Civ.P. 23 against Wells Fargo and asks this Court to: (i) enter an Order declaring that Wells Fargo's conduct is a violation of ECOA, insofar as it failed to provide notice to Named Plaintiffs and Class of its actions on their applications for a modification or change in credit within thirty day from receipt of the Class' applications for credit to modify their mortgage loans; and (ii) require delivery of ECOA Complaint notices in all future instances.

### COUNT II -- VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT MD CODE, COMM. LAW, § 14-201 *et seq.*[10]

---

[10] The Court has previously dismissed Mr. Piotrowski's claims under the MCDCA. The preservation of this allegation related to the MCDCA in this Amended Class Action Complaint is

(Individual and Class Claim)

78.      Mr. Piotrowski realleges and incorporates by reference the foregoing allegations.

79.      By threatening to foreclose, Wells Fargo has acted as a collector, directly and indirectly, as that term is defined by § 14-201(b) of MD. CODE, COMM. LAW.

80.      Mr. Piotrowski and the Plaintiffs' Class are persons as defined by § 14-201(d) of MD. CODE, COMM. LAW.

81.      The underlying mortgage transaction and threat of foreclosure related to this complaint constitutes a "consumer transaction" as defined by § 14-201(c) of MD. CODE, COMM. LAW.

82.      Wells Fargo has claimed, attempted, or threatened to enforce a right with knowledge that their right did not exist under Maryland or Federal law until they complied with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20.

83.      Mr. Piotrowski and the Class' damages as alleged herein were proximately caused by Wells Fargo's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described in ¶¶ 4, 40-41, 48, 54 above.

WHEREFORE, Mr. Piotrowski prays for the following relief against Wells Fargo for their violations of the Maryland Consumer Debt Collection Act:

A. The Court certify the Class and appoint the Named Plaintiff as class representative and his counsel as Class Counsel;

B. A money judgment of all damages caused by Wells Fargo's actions, directly or

---

solely to preserve, if necessary, to Mr. Piotrowski's appeal rights as this matter continues. *See* Doc. 20 at Pages 25-28.

indirectly, of $25,000 per Class member;

C. Their costs including attorneys' fees as well as pre- and post-judgment interest;

D. Such other and further relief as the nature of their cause may require.

### COUNT III – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*[11]

(Individual and Plaintiffs' Class Claim)

84.  Mr. & Mrs. Piotrowski reallege and incorporate by reference the foregoing allegations.

85. The mortgage loan transactions and foreclosure practices as set forth herein of the Wells Fargo against the Named Plaintiffs and Class members are governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

86. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  The prosecution of a foreclosure action involves both the extension of credit and the collection of debts.

87. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the

---

[11] The Court has previously dismissed Mr. & Mrs. Piotrowski's claims under the MCPA related to the late fees charged to their mortgage account and threats to foreclose (but not as to Wells Fargo's misrepresentations and material omissions related to the servicing of the Named Plaintiffs' loan).  The preservation of any allegations in this Amended Class Action Complaint related to the portions of Mr. & Mrs. Piotrowski's MCPA claim which has been dismissed is solely to preserve, if necessary, to their appeal rights as this matter continues.  *See* Doc. 20 at Pages 29-35.

capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

88. By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act.  Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

89. The Defendant's conduct, as set forth above, had the capacity, tendency or effect of deceiving Mr. & Mrs. Piotrowski and other Class members, who in fact were deceived or misled, causing injury and loss through:

    a.  the unfair or deceptive prosecution based upon incomplete and bogus responses to the Class members' requests for modifications of their loan terms, or threat of prosecution of a foreclosure action by Defendant through their authorized agents.

    b.  the unfair or deceptive practices of charging the Class Members late fees and other charges which resulted when they offered and accepted Trial Payment Plans ('TPP"), Special Forbearance Plans, and actually made each of those plan payments on time and reasonably relied upon Wells Fargo's promises to continue to consider their then pending modification applications.

90. Mr. & Mrs. Piotrowski and the Class Member's damages as alleged herein were proximately caused by Well Fargo's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described in ¶¶ 4, 40-41, 48, 54 above.

WHEREFORE, Mr. & Mrs. Piotrowski pray for the following relief against Defendant

for its violations of the Maryland Consumer Protection Act:

A. They be awarded as part of this claim a sum of no less than $20,000 per Class Member which represents their compensatory damages as a result of the Defendant's direct and indirect, unfair or deceptive practices as described herein including the Defendant's failure to comply with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20;

B. The Court certify the Class and appoint the Named Plaintiffs as class representatives and their counsel as Class Counsel;

C. They be awarded their reasonable attorney's fees and costs; and

D. That their claim should include such other and further relief as the Court deems just and proper.

## COUNT IV – MARYLAND MORTGAGE FRAUD PROTECTION ACT, MD. ANN. CODE, REAL PROP. § 7-401 MD. REAL PROP., *et seq.*[12]

(Individual and Plaintiffs' Class Claim)

91. Mr. & Mrs. Piotrowski reallege and incorporate by reference the foregoing allegations.

92. The Maryland Mortgage Fraud Protection Act, Md. Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendant with the Named Plaintiff and Class.

---

[12] The Court has previously dismissed Mr. & Mrs. Piotrowski's claims under the MMFPA related to any foreclosure issues (but not as to Wells Fargo's misrepresentations and material omissions related to the servicing of the Named Plaintiffs' loan). The preservation of any allegations in this Amended Class Action Complaint related to the portions of Mr. & Mrs. Piotrowski's MMFPA claim which has been dismissed is solely to preserve, if necessary, to their appeal rights as this matter continues. *See* Doc. 20 at Pages 36-38.

93. MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs and Plaintiffs' Class Members are record owners of the residential properties in question and therefore are Homeowners.

94. MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process…includes [t]he…servicing…of a mortgage loan."

95. MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

96. The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like Mr. & Mrs. Piotrowski from mortgage companies like the Defendant and ensure a level, fair playing field between all borrowers and professionals.

97. The Named Plaintiff and Class members were or are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of their residential mortgage loans as it relates to a foreclosure action or threat of foreclosure which is an attempt to collect a certain sum on the mortgage transaction.

98. MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent

that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item of (1), (2) or (3) of this section…

99. The Defendant has committed Mortgage Fraud by:

a. Knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including failing to respond to the Named Plaintiffs and Class Members' requests for a modification or change of their mortgage loans, with the intent that the misstatements, misrepresentations and omission be relied on by the Named Plaintiff and Class members (and the general public);

b. Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process with the intent that the misstatements, misrepresentations, and omissions be relied on by the Named Plaintiffs and Class members.

100. Named Plaintiffs and the Class Members have been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as stated herein including ¶¶ 4, 40-41, 48, 54 above.

101. MD ANN. CODE., REAL PROP. CODE. § 7-401 (g) provides:

Pattern of mortgage fraud means two or more incidents of mortgage fraud that:

- Involve two or more residential real properties; and

- Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

102.   Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by Defendant against the Class as described herein.

WHEREFORE, Mr. & Mrs. Piotrowski request the following on their behalf and the Plaintiffs' Class:

A.   They be awarded as part of their claims the sum of no less than $20,000 per class member which represents  their compensatory damages as a result of the Defendant's illegal practices, omissions, and misrepresentations;

B.   The Court certify the Class and appoint the Named Plaintiffs as class representative and their counsel as Class Counsel;

C.   The Class be awarded as part of all their claims the sum of no less than $60,000 per class member for the Defendant's willful and knowing violations;

D.   They be awarded as part of the claim their reasonable attorney's fees and costs; and

E.   That their claim should include such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Scott C. Borison
Scott C. Borison, Esq. (Bar No. 22576)
borison@legglaw.com

/s/ Phillip Robinson
Phillip R. Robinson, Esq., Of Counsel
(Bar No. 27824)
probinson@legglaw.com

/s/ Janet Legg
Janet Legg, Esq. (Bar No. 15552)
legg@legglaw.com
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon the following when filed with

the Court's ECF system on this 12th day of February 2012:


Virginia W. Barnhart
TREANOR POPE & HUGHES
29W. Susquehanna Avenue
Suite 110
Towson,MD 21204
*Counsel for the Defendant*


/s/ Phillip Robinson
Phillip R. Robinson